Case No. 23-1543, USA v. Chadrick Perry, Argument not to exceed 15 minutes per side. Mr. Nelson, you may proceed for the appellant. May it please the Court, I'm Paul Nelson on behalf of Chadrick Perry, and I'd like to reserve four minutes for rebuttal. In this case, this appeal presents two issues dealing with statutory interpretation, and my intention is to address the Speedy Trial issue, and unless the Court has any questions about the guideline issue, I would just rest on our briefs on that. But as far as the Speedy Trial Act is concerned, this is an issue of first impression in this circuit. The question of whether the provision in the Speedy Trial Act that limits the transportation of a defendant to a 10-day period, if that also applies when the defendant has been determined to be incompetent. And it's our position that that does, that the Speedy Trial Act would not make sense if it does allow, the purposes of the act, if it does allow, essentially an unlimited delay when someone is incompetent. We're not talking about the treatment when they're being, to attempt to restore them to competency, this is just dealing with the transportation. And I think the circumstances of this case show the problem that's presented with this. magistrate judge issued a report and recommendation dealing with this issue. The government did not object to any of the magistrate judge's findings, and so what we have here is a conclusion for purposes of this case that 140 days in excess of the 70-day Speedy Trial Act period were incurred dealing with transportation. And again, it's not dealing with the treatment of Mr. Perry, but simply with the transportation. I mean, the question is just whether the clock stops once there's a determination of mental incompetency. Pardon? The question is whether the clock stops. Yes. The determination of mental incompetency, which you agree it does. And you're saying the clock would restart for transportation periods during the incompetency time? Well, I think in order to, yes, that the general provision that the, under the Act, that time when a defendant is not competent is excluded, that that does not control over the specific transportation provision. Well, the specific transportation provision is found under Section 1, and we're talking about Section 4, which is the incompetency tolling. So I see two problems. I see one that's, I don't agree with your interpretation. I think that Section 4 stands alone, and it says as soon as there's an incompetency determination, the clock stops, and the transportation is just under Section 1, which is about proceedings concerning the defendant. And then two, it would just be odd to have the clock running while there's a, while they're declared incompetent, they couldn't be tried constitutionally. Right? I mean, your argument would require the clock to run even though they wouldn't be able to be tried. But the purpose of this is to attempt to restore them to competency so they can be tried. And that's the issue here. That's the problem, that in order to get them to the point where they can be, the BOP can attempt to restore them, that there's an unlimited, the provision as interpreted by the district court would just basically say that the clock could run and it would never stop as long as the person had been declared incompetent. And as I said, that the circumstances here show the problem there, that this is a situation where essentially the marshals and JPATs in combination took the circumstances of this case away from the court. That the provision here that is shown in the testimony of the marshal at the hearing showed that this was something that the court made a, gave an order for transportation. JPATs decided that it could not meet those time limits, but rather than go back to the court or the government go to the court and ask for additional time, that it was simply they asked the marshals, the marshals gave them additional time. There was no provision in this that any notice was given to the defendant, was given to defense counsel about this, that they're just going to continue to delay this. And it says that again, that the marshal, it was the marshal that approved extensions several times that the magistrate judge determined were not reasonable. I guess your argument is under the statute, we should do the counting one way, and I think maybe we should not do the counting the way you suggest. But your other issue is just that these restoration proceedings take a long time. And you're worried that they could take a very long time and that's harmful to a defendant. Well, that's, that's, that is one thing. That's a separate issue, though, from what we're talking about. We're not talking about the restoration itself, the attempts to restore the person to competency. We're simply talking about the transportation to get them to the point where they, where BOP can attempt to restore them. I just think the transportation is under a separate section. In other words, I could just see a, transportation's a problem. I could see, I could see a separate argument, which is the government is underfunding restoration services so badly that it's creating some due process problem for defendants, and you could raise a constitutional challenge to the government system for restoring one's competency. But that's, I don't think that's what you're arguing here. In other words, you had, I thought your story had a parade of horribles about the government can take as long as they want to restore someone. That's a bad system. There should be some check on the government. And I think that would have to come by way of a constitutional challenge, at least under this, unless we view the statute your way. But if, but the statute seems to say once there's an incompetency determination, the clock stops. But it says, what it talks about though is delay resulting from the fact that the defendant is mentally incompetent. And as, and again, as we cited to the Dellinger case out of the Eastern District, that I think that was a much better analysis that the delay is not resulting from the incompetence, the delay is resulting from the marshal's inability or in some cases, the conclusion that they did not have to transport them. For counting cases, there's some circuits that have gone against you, correct? And I understand that. But again, we're asking this court, we're asking this circuit to make the decision that in that situation, that the time does not count. And say again that part of this, that the, and even with the transportation provision where it talks about the treatment and so on and hospitalization, that that again is something that happens when they get to this BOP for the restoration. That they don't just go there and sit there, they go there, they're treated, they're hospitalized, and again, that would fall within the transportation provision. That again, that that is something that I think the incompetency provision should not be taken out of context. It should all be looked at in the overall context of this. And that the, that I think the provision, the transportation is something that would be considered the overall part of the proceedings to determine the competency and to restore them. But again, the problem here, and I think it is, it's a situation that ultimately, although it was not a due process claim raised here, that in a situation, and compared to some of the other cases, I suppose that the 140 day unjustified delay here, that there are some of these where they talked about years where people were not being transported, but still that we have a situation where people are not being transported. In addition, we have a defendant who the court determined was not competent, required treatment, and rather than getting that person to a location where he can receive the treatment that he requires, that he just, they just allow him to sit in a county jail during that time for several months. But say again, that we think the main issue here is the fact that the court should not simply say that whenever someone is incompetent, that the delay results from that incompetence. In a situation like this, that the delay here did not result from his incompetence, the delay here resulted from the fact that the marshals and JPAT did not, decided not to move him to a point where they could, where he could undergo treatment. And again, that's the issue. We're not talking about, and it shouldn't be confused with the treatment issues and the restoration issues, that this is simply dealing with the transportation to get a person to the point where he can be restored or the attempts can be made to restore him to competency. What about this Insanity Defense Reform Act? Can, could Mr. Perry have made some claims under that act with respect to? Well that deals, that deals with the treatment as I read it and some of the cases I guess have said that the time period under that act would include the transportation period. That that act as I read it, it just, that that act simply dealt with the time once he's at the facility where they're attempting to restore him. And that's why one reason here that ultimately that the decision was made when he finally got to where he was going and they were able to, to treat him, that they were able to restore him to competence. Thank you. Good afternoon. Lauren Bicksaki, may it please the court. I represent the United States Attorney's Office for the Western District of Michigan. Both of Appellant's arguments are meritless on appeal. So first, the Speedy Trial Act, which counsel's been discussing, and Judge Riedler really zeroed in on exactly why the argument failed. And it fails because the plain text of the statute, as well as the structure, as well as all canons of statutory interpretation and all appeals courts that have decided this issue, have determined that the incompetency provision of Section H4 is separate than the 10-day reasonableness transportation period of H1, which applies to things such as competency evaluations. So H1 deals with before a person is deemed incompetent, and then H4 kicks in an incompetency land, we'll call it. And once a person is deemed incompetent by the court, then the plain text of the statute is very clear. It says any period of delay resulting from the fact that the defendant is mentally incompetent shall be excluded. So on its face, that provision is absolute, it is automatic, it is clear, it is not suspect to different interpretations. Now... Is there any relief available to a defendant who's just held in perpetuity, has been declared incompetent, the government's not finding treatment, transporting them all over the place, it's taking years. Is there any recourse available to the defendant? Yes, that was the exact issue that was of concern in the Supreme Court case of Jackson of 1972. In that case, it had been years. A person was not being transported, and the record reflected he had the mental state of a child such that he was likely never to be deemed competent. And the Supreme Court said there that indeed that is a due process violation to indefinitely hold someone without any potential of bringing him to a competency to stand trial. And so in that case, the Supreme Court found a due process avenue of relief. The government submits in this case, first and foremost, no due process claim was brought. Secondly, it does not rise to the level of that more indefinite detention. So in addition to the fact that on its face, this statute is very absolute, it's also important to consider the overall context and structure of the statute itself. And counsel said the incompetency provision should be looked at in the overall context. And when you look at the overall context, you see that Congress absolutely knew how to impose time limits under the Speedy Trial Act. They did it in several other provisions. For example, when district court judges have 30 days to take a motion under advisement and issue a ruling. If Congress had felt that it was important to make a time limit for how long a person can be transported or wait for a bed at a BOP facility, they sure knew how to do it. They knew how to do it and they did it in the section before this. But they didn't impose a time limit. And they didn't even impose a time limit similar to the 10-day reasonableness transportation period for competency evaluations. So in that case, 10 days of transportation is presumptively reasonable, but that can be rebutted and the government can show why more time was needed. There's no language at all limiting the amount of time that transportation can take. And so to add or to graft on an additional restriction would do an injustice to the intent of Congress, to the letter of the law. And I think that's what the three court of appeals that have already decided this issue acknowledge. This is an open and shut case when you look at the words of the statute. Council has provided nothing other than the fact that elsewhere in the statute, there is a transportation period to suggest that it should be limited. And now the district court opinion that council has discussed Dellinger, I will note two things. First, Dellinger was decided without the benefit of these court of appeals decisions. So the 11th circuit in Pendleton was in 2016, the 9th circuit in Romero was in 2016, and Patterson in the 7th circuit was in 2017. And we see that the Dellinger case was three years before in 2013. And so that case didn't grapple with all of the arguments and didn't grapple with all the concerns that the courts of appeals were going through in their analysis. Second, with respect to Dellinger, and with respect to some of council's arguments, council has said repeatedly that the delay does not result from the finding of incompetence, it results from failures of the government. But the Supreme Court has cautioned against that sort of causal analysis. They did so in Tinklenburg, the Supreme Court case, as well as Henderson. And what the court noted as one of its reasons for finding its holding in Tinklenburg was that the Speedy Trial Act is meant to be an efficient statute that is easy to understand and easy to determine what the exclusions are. And the words were automatic. Where a provision of the statute purports to be automatic, the courts interpret that to be automatic. We don't want district courts having extensive argument and going back and forth and trying to understand, well, does this apply or not, or what was the true cause? No, it's automatic because it's supposed to be efficient, and it's supposed to be easy for everyone to know exactly where they stand on the Speedy Trial Act. All of the circuit court cases that have considered this issue have understood that, and we ask this court to understand that as well. Now, I know counsel did not address the categorical approach, but I don't want to leave without doing so. It's the government's position that this is a textbook case of a crime of violence. And it really comes down to two key issues or two key themes for why this is a textbook crime of violence. And that is because the statute at issue here, aggravated domestic assault, not simple assault, but this aggravated domestic assault, requires an infliction of a serious or aggravated injury. Someone cannot violate that statute unless they inflict on another person a serious injury. So that distinguishes many of the cases where other less forceful actions do not result in an injury. And second, the statute meets the required mental states necessary for a crime of violence. This is not an offense of recklessness. This is not a situation where a person could be convicted because they were driving their car 120 miles per hour and they veered off and injured someone inadvertently. This is not a situation where a person fires a gun in the air and inadvertently the bullet hits someone. The mens rea under this Michigan statute requires intent and it requires that the person intend to cause an injury and then actually cause the injury. So under Johnson, under Borden, and under Stoeckling, it clearly qualifies as force capable of causing physical pain or injury to another person. The Supreme Court in Stoeckling said that the requisite force to constitute a crime of violence need not be reasonably expected to cause pain or injury. Instead, it must be merely force capable of causing pain or injury. Here, we know that the force necessary to be convicted under this offense is capable of causing physical pain or injury because the offense requires that some sort of serious injury actually be caused. Ipso facto, because that injury was actually caused, we know that the force was capable of causing the injury. Does the court have any questions regarding the categorical approach? With that, I'll yield my time. Thank you. Thank you. With regard to the Speedy Trial Act, when the government's talking about these different provisions, there's an issue about whether they're automatically or easily applied. I think that it's very simple if, in fact, the transportation provision applies to the transportation to have someone restored. It's the same thing that judges go through all the time just with regard to other things, that the days are counted and they're excluded if they go beyond that. And there's a presumption that it's unreasonable, and here the government failed to rebut that presumption as far as the magistrate judge was concerned, and the government did not object to that. As far as the aggravated assault, that still what the court has to look at is the fact that under Michigan law, that assault includes placing a person in fear of a battery. A battery under Michigan law can be offensive touching. It does not have to be actual physical or forceful violent conduct by Michigan statute. And when it says that it inflicts injury, that the injury results from that. So it could be if someone is put in fear of receiving an injury and someone lunges at them and they fall down and they get hurt, then that could conceivably fall within the scope of the aggravated assault, but that would not be within the scope under the guidelines. That the serious bodily injury under the guidelines, it's in section 1B1.1, application note 1, per end, capital M, serious bodily injury is injury involving extreme physical pain or protracted impairment of bodily function or requires medical intervention such as surgery, hospitalization or physical rehabilitation. Under Michigan law, the serious aggravated injury is something that just requires immediate medical attention. And so if someone falls down and gets hurt, and that requires immediate medical attention, under Michigan law, that would be serious bodily injury, but that would not count as serious bodily injury under the guidelines. So we think that both of these issues are legitimate issues for the court to consider. We'd ask the court to reverse the order as far as the Speedy Trial Act is concerned, remand the case to the district court where the district court could make a determination whether the dismissal should be with or without prejudice. And then also as far as the sentencing is concerned, that Mr. Perry should be resentenced without the enhancement for a crime of violence. Thank you. Thank you. We appreciate the arguments both of you have given. We'll consider the case carefully.